IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JUNE DENISE ZUCK PLAINTIFF

v. CASE NO. 12-02157

CAROLYN COLVIN,[1] Acting Commissioner
of Social Security Administration DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I. Procedural Background:

Plaintiff filed her application for SSI on October 9, 2009, alleging an onset date of September 1, 2007, based upon degenerative disc disease, chronic neck pain, seizure disorder, diabetes mellitus, major depressive disorder, borderline intellectual functioning, and polysubstance abuse. Plaintiff's application was denied initially on February 4, 2010, and again upon reconsideration on April 8, 2010. Plaintiff then requested an administrative hearing on April 22, 2010, which was held on August 17, 2010. The Plaintiff was present and represented by counsel.

At the time of the administrative hearing, Plaintiff was forty-eight years of age, and her educational history indicated that she had earned a GED. The Plaintiff had past relevant work ("PRW") experience as a poultry de-boner and a package handler/hand packager.

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the Defendant in this suit.

On March 15, 2011, the Administrative Law Judge ("ALJ") concluded that although severe, Plaintiff's degenerative disc disease, chronic neck pain, seizure disorder, diabetes mellitus, major depressive disorder, borderline intellectual functioning, and polysubstance abuse do not meet or equal any 20 C.F.R. Part 404, Subpart P, Appendix 1 listing. (Tr. 49). The ALJ found that Plaintiff maintained the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 416.967(b), except that she can only occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 51). The ALJ also found that the Plaintiff can have no more than moderate exposure to hazards, cannot drive for work, and must have only incidental interpersonal contact and perform tasks under direct supervision. (Tr. 51). The ALJ found the Plaintiff is capable of performing her past relevant work as a hand packager as this work does not require performance of activities precluded by Plaintiff's RFC, and is performed at a light exertional and unskilled level. (Tr. 56). Alternatively, the ALJ requested a vocational expert ("VE") to consider the Plaintiff's limitations, and after doing so, the VE determined that the jobs machine tender (DOT No. 524.685-038) and inspector (DOT No. 727.685-010) are also available in the national economy and Arkansas, and that the Plaintiff is capable of making a successful adjustment to other work in the national economy. (Tr. 57). These jobs are available with 118,800 nationally and 1,500 in Arkansas, and 76,800 nationally and 1,000 in Arkansas, respectively. (Tr. 57). The ALJ further found, based on all applicable factors, a finding of "not disabled" is appropriate, and determined the Plaintiff has not been under a disability from October 9, 2009, through the date of his decision. (Tr. 57).

## II. Applicable Law:

The court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his/her disability by establishing a physical and/or mental disability that has lasted at least one year, and which prevents him/her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his/her disability, not simply his/her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits.[2] Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her functional capacity. *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

## III. Discussion:

**Plaintiff's Arguments:**

(A) The Plaintiff contends that the ALJ did not develop the record fully and fairly, and that additional evaluations were required. (B) The Plaintiff argues that the ALJ's credibility analysis was improper, claiming the ALJ's decision was not based on relevant inconsistencies. (C) The Plaintiff argues that the ALJ's RFC determination is inconsistent with the evidence, and that she cannot perform her past relevant work. (D) Lastly, the Plaintiff argues the ALJ presented a faulty hypothetical to the VE, resulting in an unfair assessment when discussing other relevant work.

---

[2] (1) Is the claimant engaged in substantial gainful activity; (2) Does the claimant have a severe impairment or combination of impairments limiting his/her ability to work; (3) Does the impairment meet a listed impairment which is presumed disabling; (4) Does the claimant have a sufficient RFC to perform past work despite impairment(s); (5) Is the claimant able to perform other substantial gainful work within the economy, given claimant's age, education, and work experience? *See* 20 C.F.R. §§ 404.1520(a)-(f) and 416.920 (2003).

**A. Fully Developed Record:**

The Plaintiff contends that the record is incomplete, and that the ALJ failed to develop the available evidence adequately. The Plaintiff relies on the contention that the a nurse-practitioner is an unacceptable medical source. According to the social security regulations, only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, provide medical opinions, and be considered treating sources. 20 C.F.R. §§ 404.1527 (a)(2), (d) and 416.927 (a)(2), (d) (2007). Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a) (2007). Other sources, including nurse-practitioners, may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *See also* SSR 06-3p. They cannot, however, establish the existence of a medically determinable impairment.

Here, the ALJ used the nurse practitioner's evaluations to determine the severity of, rather than the existence of, Plaintiff's medically determinable impairments, as such, he used it properly. We also note that the nurse practitioner's evaluation was endorsed by a medical doctor, entitling it to treating source weight. *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006) (allowing nurse practitioner, who was working as a part of a medical team with a doctor, to be treated as a treating source). Accordingly, we can find no error in the ALJ's reliance on the nurse practitioner's evaluations, and this court agrees that an ALJ does not need to obtain additional evidence if the record provides a sufficient basis for his decision. *See Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

Moreover, the ALJ also considered more evidence than just Nurse Pham-Russell/Dr. Floyd's report in reaching his decision. (Tr. 51-56). Other medical source statements were provided that indicated the Plaintiff was not disabled, but had only mild limitations that needed to be considered; the ALJ based his decision on all such medical statements. (Tr. 365, 417). It appears from the record that the Plaintiff has provided no medical records since her date of application on October 9, 2009, other than one office visit to the Van Buren Family Medical Clinic on October 19, 2009, to resume prescription medications, and one visit to the Summit Medical Center Emergency Room for pneumonia on November 1, 2009. (Tr. 349, 398). All other medical evidence of record is prior to

the application date, and/or provided by the Social Security Administration while attempting to determine the Plaintiff's RFC. It should also be noted that the SSA scheduled an appointment with a psychiatrist for the Plaintiff on December 1, 2009, for an additional mental health evaluation, but the Plaintiff did not attend this appointment. (Tr. 30, 358). Under the regulations of the Social Security Administration, the defendant may find that a claimant is not disabled if the claimant, without good reason, refused to take part in a consultative examination. 20 C.F.R. § 404.1518(a).

Accordingly, the court finds that the record was sufficiently developed by the ALJ allowing him to make an informed decision regarding Plaintiff's alleged disability.

**B. Credibility:**

The Plaintiff contends that the ALJ did not perform a proper credibility analysis. The ALJ is required to consider the following factors when evaluating the claimant's subjective complaints: (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the pain; (iii) dosage, effectiveness, and side effects of medication; (iv) precipitating and aggravating factors; and (v) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider the subjective complaints of a claimant, even if they are not fully supported by the objective medical evidence provided. *Id.* The ALJ must also make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the Plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id*.

*(i) Daily Activities:*

The Plaintiff contends that she is disabled and unable to perform a variety of tasks due to the pain she regularly experiences. It should be noted that the ALJ's review of the function report from January 29, 2010, shows the Plaintiff dresses herself, watches television, prepares food, showers, shops, pays bills, counts change, manages a savings account and uses a checkbook, visits family, and reads. (Tr. 193-195). The Plaintiff also states that she visits friends, her kids visit her, and she will "play with the dogs and stuff all day and watch TV." (Tr. 22). Further, despite Plaintiff's alleged symptoms, she claims that her niece buys her tobacco for "helping around the house." (Tr. 28). The

Plaintiff has also admitted that she drank alcohol with friends, and that she was able to go bowling at a local bowling alley. (Tr. 32). Many of these activities are inconsistent with reports of disabling pain and difficulties with social functioning. *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church). Moreover, "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805 (8th Cir. 2009); *Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir. 2005); *See also Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated her pain did not interfere with her ability to concentrate; claimant's visits with her children indicated she could engage in some social functioning).

While in prison, Plaintiff's duties were limited, but not to the extent of Plaintiff's complaints described above. She was taken off field squad due to complaints about her back, but she was still able to perform the duty of barracks porter, which involved cleaning toilets and sinks; up to four or five each in one large bathroom every night, and she was also able to sweep the bathroom and the main walkway. (Tr. 29-30). These duties were performed after her alleged onset date of September 1, 2007, as she was in prison from August of 2008, through September of 2009

The court finds that the ALJ properly determined that the Plaintiff's daily activities are inconsistent with the claimed disability.

*(ii) Treatment and Medication:*

While the Plaintiff was in prison she took medications including over the counter medications to relieve her pain, and psychiatric medications that reportedly relieved her symptoms, and on December 1, 2009, the Plaintiff indicated that her anxiety was exacerbated due to a lack of medication. (Tr. 212, 242-347). *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability); *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (if an impairment can be controlled by treatment or medication, it cannot be considered disabling). It should also be noted that while in prison, Plaintiff was seen by medical staff approximately thirty times, but only five were related to her back pain, and none were for her mental disorders other than to receive medication. (Tr. 53). Other than an emergency room visit at Summit Medical Center for pneumonia

on November 1, 2009, the Plaintiff has only been to see a doctor one time since her release from prison. (Tr. 28). After leaving prison she continued on the medication Paxil for anxiety, but her continued failure to go to the doctor eventually resulted in the medication being discontinued. (Tr. 25). The ALJ may consider failure to take medications when evaluating the Plaintiff's complaints. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (ALJ may consider failure to take prescription medication and seek ongoing treatment to be inconsistent with complaints); *See also Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (failure to follow prescribed course of treatment is grounds for denial). In general, failure to obtain follow-up treatment indicates a person's condition may not be as disabling, or as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) ("given his alleged pain, [Claimant's] failure to seek medical treatment may be inconsistent with a finding of disability"). Additionally, there is simply no way to assess the effectiveness of treatment from pain management since Plaintiff was denied this care due to a urinalysis which tested positive for the illegal drug marijuana. (Tr. 39).

The court finds that the ALJ properly considered Plaintiff's lack of treatment and lack of medication to further discredit her claim for disability.

*(iii) Financial Concerns:*

The Plaintiff claims that she has not continued treatment, evaluation, or medication due to financial difficulties. However, a Plaintiff is required to provide evidence that he/she has been denied medical treatment due to financial constraints, or that he/she attempted to obtain low cost or no cost treatment for this argument to succeed. *Clark v. Shalala*, 28 F.3d 828, 831 n.4 (8th Cir. 1994); *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992).

Plaintiff stated during her hearing that she had an appointment with Good Samaritan, but there is no evidence to indicate that she followed through with this appointment and/or received medication for her alleged symptoms. (Tr. 64). This absence of further evidence indicates that the Plaintiff failed to follow treatment recommendations and/or take medications as prescribed. There is also no evidence to indicate that the Plaintiff attempted to obtain any other low cost or no cost treatment. In fact, it is difficult to consider the Plaintiff's alleged financial hardships when she continues smoking cigarettes, continues drinking alcohol with friends (which ultimately resulted in an arrest for public intoxication after her release from prison), and is able to purchase and/or use the

illegal drug marijuana. (Tr. 32, 39). *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999)(no evidence Plaintiff sought treatment for indigents, or chose to forgo smoking three packs of cigarettes per day to help finance pain medication).

For the above reasons, the ALJ properly determined the Plaintiff did not have adequate financial hardships to prevent her from seeking treatment or medication.

**C. RFC Assessment:**

The Plaintiff contends that she does not have the sufficient RFC to perform substantial gainful activity in the economy. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). RFC is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545, 416.945, Social Security Ruling (SSR) 96-8p (1996). RFC is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his/her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)); *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 200) (per curiam) ("to the extent [Claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Cox*, 495 F.3d at 620; 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The ALJ determined that the Plaintiff had the RFC to perform a range of light work with additional limitations that reasonably accommodate Plaintiff's alleged back pain and mental

limitations. (Tr. 51).

The Plaintiff was examined by Dr. Jackson on February 4, 2010, and he determined she could lift twenty-five to fifty pounds, stand for six hours, and perform tasks by rote; he further noted that Plaintiff's vocational outlook was favorable. (Tr. 180). On September 20, 2010, Dr. Honghiran found that the Plaintiff suffers from degenerative disc disease, but she had no herniated discs or nerve damage; he further stated that Plaintiff's main issues were her mood disorders. (Tr. 417). The ALJ also found that Plaintiff has not been ordered to limit herself as she has by any medical professional, and that the medication Paxil controlled the Plaintiff's mood disorders. (Tr. 53). *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (if an impairment can be controlled by treatment or medication, it cannot be considered disabling). The Plaintiff provided no evidence of ongoing evaluation or treatment, and no evidence to support the limitations claimed. The ALJ is permitted to discredit a claimant when there is an absence of physician-ordered limitations, and a lack of objective medical evidence. *See Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000).

In January of 2010, another evaluator, Dr. LaGrand, noted that while Plaintiff claims to suffer from bipolar disorder, she has no symptoms consistent with that disorder. (Tr. 364). Another mental RFC opinion was provided by Dr. Williams on February 3, 2010, and he noted that the Plaintiff was capable of performing tasks by rote and had no marked limitations. (Tr. 371-388).

On March 20, 2010 the Plaintiff appealed the Social Security Administration's initial decision and requested reconsideration, but she indicated there were no changes in her condition, she had not seen any new doctors for physical or mental concerns, had not been to any new clinics, and had no new injuries, illnesses, or impairments. (Tr. 64). The Plaintiff also failed to present any further evidence to document her claimed conditions or limitations, and did not provide any new medical records, lab reports, or medical diagnoses. (Tr. 64). There is simply not enough evidence in the record to support the limitations claimed by the Plaintiff.

Further, while incarcerated during 2008, the court notes that the Plaintiff worked in the position of barracks porter, which included cleaning toilets and sweeping. (Tr. 29). *See* 20 C.F.R. § 404.1571 (even if the work done was not substantial gainful activity, it may show the ability to do more work than actually done).

For the reasons stated above, the court finds that the ALJ properly determined the Plaintiff's

RFC allows her to perform light work, even with her additional limitations of back pain and mood disorders.

**D. Vocational Expert Testimony:**

Plaintiff contends she is disabled because she has not been employed since her alleged onset on September 1, 2007. (Tr. 47). Additionally, it should be noted that the Plaintiff was in prison from August of 2008 through October of 2009. (Tr. 17). While her unemployment may be true, it does not mean that she cannot be employed. As mentioned above, the ALJ found that the Plaintiff is capable of performing her past relevant work as a hand packager, and in the alternative, posed hypothetical questions to the VE to consider the Plaintiff's limitations to determine other work available in the national economy and Arkansas. (Tr. 57). At this step the ALJ is permitted to use a VE. The VE must be presented with a hypothetical question by the ALJ including the Plaintiff's age, education, work experience, and all of the limitations he believes Plaintiff suffers as a result of his or her impairment(s). *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008). The VE's testimony is generally taken as substantial evidence, unless the Plaintiff can show that the VE deviated from the job as described in the Dictionary of Occupational Titles, and the VE made no mention of his or her deviation. *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003). During this step of the evaluation, it is important to note that it is the Plaintiff's burden to demonstrate an inability to return to past relevant work. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n. 3 (8th Cir. 2008)).

In the present case, the ALJ posed a series of hypothetical questions to the VE, including questions assuming the ability to perform a range of medium, light, and sedentary unskilled work (which included the Plaintiff's past relevant work), including additional limitations resulting from the Plaintiff's subjective complaints, and then the VE discussed the work available at each level. (Tr. 34-37). The ALJ ultimately concluded that the Plaintiff could perform a range of light work, and the VE offered her opinion that the positions of assembler and inspector would be available to an individual with Plaintiff's limitations. (Tr. 57).

After reviewing the record in this case, the court finds the ALJ's hypothetical question concluding that the Plaintiff could perform a range of light work, as described in his RFC determination, included all of the limitations supported by the evidence and constitutes substantial

evidence to show that the Plaintiff retained the ability to perform work that exists in significant numbers in the national economy and Arkansas.

**IV. Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and the decision is affirmed. The Plaintiff's complaint is dismissed with prejudice.

Dated this 21st day of June 2013.

/S/ *J. Marschewski*

HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE